IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 21-cv-01489-CMA-MEH

ERIK G. FISCHER,

    Plaintiff,

v.

ROCKY MOUNTAIN HOSPITAL AND MEDICAL SERVICE, INC., *d/b/a* Anthem Blue Cross and Blue Shield,

    Defendant.

---

**FINAL ORDER ON ADMINISTRATIVE RECORD**

---

This matter is before the Court on the parties' Joint Motion for Determination of ERISA Action. (Doc. # 34.) Plaintiff Erik G. Fischer brings this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, to recover benefits he alleges were denied to him by Defendant Rocky Mountain Hospital and Medical Service ("Anthem"). (Doc. # 1.) For the following reasons, the Court enters judgment in favor of Anthem.

### I.    BACKGROUND

This case arises from an alleged denial of coverage relating to Plaintiff's daily prescription medication, Azithromycin. Plaintiff contends that in 2008, following an injury and subsequent surgery, he developed a microbial infection in his spine and abdomen. (Doc. # 31 at 2.) Since 2013, Plaintiff has participated in Anthem's ERISA-governed

medical benefits plan, PPO GenRX plan (the "Plan"), and has regularly submitted claims to Anthem to recover medical benefits for his Azithromycin prescription to treat his infection. (*Id.*)

The Plan requires that participants exhaust their administrative remedies by completing an internal appeals process before filing any lawsuit relating to a denied claim for benefits. It plainly states: "You must exhaust our internal appeals process before filing a lawsuit or other legal action of any kind against Us." (Doc. # 27-1 at 84.)[1] In describing the internal appeals process, the Plan explains that "[m]embers of Our staff, who were not involved when your claim was first denied, will review the appeal." (*Id.* at 83.) It further states, "[i]f your first internal appeal process is denied, you can ask for a second level appeal. But you don't have to file a second level appeal with Us before . . . pursuing legal action." (*Id.*)

The events relating to the denied claim in this case occurred in the spring of 2021. On April 1, 2021, Anthem approved Plaintiff's request for coverage of Azithromycin (600 mg) from April 1, 2021, until April 1, 2022. (*Id.* at 101–03.) In the letter informing Plaintiff that his request was approved, Anthem stated that his claims for Azithromycin should be covered as long as:

> You don't reach a benefit limit that applies to the service at the time we process the claim. Remember that under your plan, there may be benefit limits on how many of these services or treatments will be covered. For more information on benefit limits, see the "Schedule of Benefits (Who Pays What)" section of your certificate. We will apply any benefit limits

---

[1] The exhibits filed at Doc. # 27 constitute the Administrative Record in this matter. The Court cites to the docket number of the exhibit (*e.g.*, Doc. # 27-1) and the page number from the Administrative Record (*e.g.*, at 6).

> based on how many services or treatments under the limit have been received and covered as of the date we process the claim.

(*Id.* at 102.)

The Schedule of Benefits (Who Pays What) section of the Plan indicates that for Outpatient Care Retail Pharmacy Drugs, participants will be responsible for "Generic formulary $15 Copayment or 30% Copayment of the negotiated fee for Generic self-injectable drugs, per prescription at a participating pharmacy up to a 30-day supply." (*Id.* at 6.) In addition, the Plan provides the following limitations regarding payment and refills:

> We will not pay for a covered drug or supply unless the Prescription Drug Maximum Allowed Amount is more than the Copayment that you have to pay. See *the Schedule of Benefits* to determine the associated Copayment.
>
> You are limited to a 30-day supply of a Prescription Drug if obtained at an In-Network Retail Pharmacy or up to a 90-day supply if received through the In-Network Home Delivery Pharmacy. In most cases, you must use a certain amount of your prescription before it can be refilled.

(*Id.* at 52.)

On April 22, 2021, Plaintiff refilled his prescription for 18 pills of Azithromycin and paid a copay of $15. (*Id.* at 112.) On May 24, 2021, Plaintiff attempted to refill his prescription for 28 pills of Azithromycin, and Anthem rejected the claim. (*Id.* at 106.) The "Reject Code – Description" stated "76 – Plan Limitations Exceeded." (*Id.*) Further, the record indicates "MAX QTY OF 30.000 IN 022 DAYS, QUANTITY REMAINING 18.00." (*Id.* at 107.)

On May 28, 2021, Plaintiff refilled his prescription for 3 pills of Azithromycin. (*Id.* at 109.) Anthem approved the claim. (*Id.*) However, because the 3 pills cost $8.52—less

than the $15 copay provided by the Plan—Anthem did not pay the expense and Plaintiff paid the amount out-of-pocket. (*Id.* at 112.)

Plaintiff initiated this action on June 2, 2021. In his Complaint, he alleges that on May 28, 2021,[2] he had to pay $448.57 for a 28-day supply of his prescription after Anthem refused to cover his claim. (Doc. # 1 at ¶ 21.) He asserts a single claim for relief for recovery of benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B). Plaintiff also alleges that this is not the first time Anthem has denied coverage for his medication and that he has had to file three prior lawsuits (in 2014, 2016, and 2020) relating to Anthem denying coverage for his prescription. (*Id.* at ¶¶ 16–18.)

Plaintiff filed his Opening Brief on March 25, 2022. (Doc. # 32.) He requests the Court enter judgment in his favor for unpaid and/or denied benefits in an amount of $448.57 for the alleged claim denial in May 2021 and $8.52 for the three-day quantity of Azithromycin provided in the interim. (*Id.* at 31.) He also requests "[d]eclaratory judgment enforcing and clarifying his right to receive a 30-day supply of Azithromycin (600 mg) for a $15 co-pay, pursuant to the terms of his Plan." (*Id.*) Finally, he seeks attorney's fees and costs. (*Id.*)

Anthem filed a Response on April 29, 2022. (Doc. # 32.) Anthem argues (1) Plaintiff failed to exhaust his administrative remedies for any denied claim in May 2021; (2) regardless, Anthem is entitled to judgment on the merits because Plaintiff had not fully filled and completed his previous 30-day supply before attempting to get another

---

[2] Although Plaintiff alleges in his Complaint that this denial occurred on May 28, 2021, (Doc. # 1 at ¶ 21), it appears elsewhere in the record that this denial occurred on May 24, 2021 (Doc. # 31 at 4).

4

28-day supply pursuant to the Plan; and (3) Anthem should be permitted to recover attorneys' fees and costs because Plaintiff continues to file frivolous lawsuits without first exhausting his administrative remedies.

Plaintiff followed with his Reply (Doc. # 33). The matter is now ripe for review.

## II.     LEGAL STANDARDS

In an ERISA case where, as here, the Plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the Court reviews the administrator's decision under the arbitrary and capricious standard.[3] *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010) (quoting *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009)). In reviewing the decision of a plan administrator to deny benefits, the district court is "limited to the administrative record." *Id.*; *see also Geddes v. United Staffing Alliance Emp. Med. Plan*, 469 F.3d 919, 928 (10th Cir. 2006) (instructing that a court reviewing a denial of benefits under the arbitrary and capricious standard should "consider only evidence from the closed administrative record"). The administrative record is limited to "the materials compiled by the administrator in the course of making his decision." *Hall v. UNUM Life Ins. Co. of Am.*, 300 F.3d 1197, 1201 (10th Cir. 2002).

Under the arbitrary and capricious standard of review, the Court must uphold Anthem's determination "so long as it was made on a reasoned basis and supported by

---

[3] The parties agree that the abuse of discretion, or arbitrary and capricious, standard of review applies in this case. (Doc. # 15 at 2.) *See Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1010 n.10 (10th Cir. 2008) (observing that in the ERISA context, the Court treats the terms 'arbitrary and capricious' and 'abuse of discretion' as interchangeable).

substantial evidence." *Van Steen v. Life Ins. Co. of N. Am.*, 878 F.3d 994, 997 (10th Cir. 2018). "Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decisionmaker." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1282 (10th Cir. 2002) (quotation marks and brackets omitted). "Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary." *Id.* (citing *Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 380 n.4 (10th Cir. 1992)).

### III. DISCUSSION

#### A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

First, the Court will address Anthem's argument that Plaintiff's case is barred because he failed to exhaust his administrative remedies prior to filing this lawsuit.

Although ERISA does not contain an explicit exhaustion requirement, the Tenth Circuit and other courts have uniformly held that "exhaustion of administrative (i.e., company- or plan-provided) remedies is an implicit prerequisite to seeking judicial relief" in ERISA actions. *McGraw v. Prudential Ins. Co. of Am.*, 137 F.3d 1253, 1263 (10th Cir. 1998); *see also Heimeschoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013) (observing that the courts of appeals "have uniformly required that participants exhaust internal review" before filing an ERISA claim for judicial review). The Tenth Circuit explained that this proposition "derives from the exhaustion doctrine permeating all judicial review of administrative agency action" and "aligns with ERISA's overall structure of placing primary responsibility for claim resolution on fund trustees."

*McGraw*, 137 F.3d at 1263. Accordingly, district courts apply the exhaustion requirement as a matter of judicial discretion. *Id.*

Courts will waive the exhaustion requirement "under two limited circumstances: first, when resort to administrative remedies would be futile; or second, when the remedy provided is inadequate." *Id.* The futility exception is limited to those instances where resort to administrative remedies would be "clearly useless." *Id.* (quoting *Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.*, 40 F.3d 426, 432 (D.C. Cir. 1994)). Unless a plaintiff who failed to exhaust administrative remedies can establish some exception to the exhaustion requirement, he is barred from bringing a civil action. *Holmes v. Colo. Coalition for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1204 (10th Cir. 2014).

Plaintiff does not dispute that he did not file an internal appeal with Anthem and therefore failed to exhaust his administrative remedies in this case. *See* (Doc. # 1 at ¶ 24; Doc. # 33 at 2.) Moreover, in his Opening Brief, Plaintiff does not address whether filing an internal appeal would have been futile.[4] *See generally* (Doc. # 31). On this basis, Anthem argues that it entitled to judgment. (Doc. # 32 at 7–8); *see Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) (noting the general rule in the Tenth Circuit that a party waives issues and arguments raised for the first time in a reply brief).

The Court agrees with Anthem that Plaintiff failed to argue that exhausting his administrative remedies would have been futile in his Opening Brief. However, Plaintiff alleged futility in his Complaint (Doc. # 1 at ¶ 24), and he has consistently maintained

---

[4] Plaintiff extensively argues futility in his Reply Brief. *See* (Doc. # 33 at 2–6).

7

throughout his briefing that he has "endured years of unsubstantiated benefit denials for the same medication." (Doc. # 31 at 9.) Plaintiff repeatedly references three lawsuits concerning past denials of coverage that are not at issue in this action, but that Plaintiff contends show the futility of exhausting administrative remedies pursuant to the Plan's internal appeals process. Because Plaintiff's futility argument has been an underlying theme of this entire lawsuit, the Court declines to reject the argument as waived.

Nevertheless, upon carefully reviewing the record in this case and the parties' briefing, the Court finds that Plaintiff has failed to make the "requisite showing" that futility was an excuse for him not filing an internal appeal pursuant to the Plan regarding his allegedly denied May 2021 claim. *Getting v. Fortis Benefits Ins. Co.*, 5 F. App'x 833, 836 (10th Cir. 2001). Although Plaintiff cites to three other cases that he filed against Anthem, in 2014, 2016, and 2020, Plaintiff makes no showing of how these prior cases demonstrate that engaging in Anthem's internal appeals process is "completely useless." *McGraw*, 137 F.3d at 1264. Rather, Plaintiff appears to concede that he failed to pursue or exhaust administrative remedies in at least two of those cases as well. For the 2014 case, Plaintiff contends that he "placed numerous calls" to Anthem and that the pharmacy placed calls on his behalf, but Plaintiff makes no mention of filing an internal appeal or otherwise pursuing administrative remedies. (Doc. # 33 at 3–4.) With respect to the 2016 case, Plaintiff argues that "appeals have been submitted," but that his "challenge was denied without a written response clarifying its reasoning." (*Id.* at 4.) Plaintiff provides no evidence of this appeal or denial. Finally, for the 2020 case, Plaintiff

8

indicates that he filed a lawsuit without exhausting administrative remedies and instead argued that adhering to the exhaustion requirement would be futile. (*Id.*)

Plaintiff's assertions regarding prior cases are insufficient to show that filing an internal appeal for the alleged May 2021 denial of coverage would have been futile. In order to meet the futility exception, Plaintiff must show his claim "would have been denied on appeal, and not just that [he] thinks its unlikely an appeal will result in a different decision." *Getting*, 5 F. App'x at 836. Plaintiff has offered no evidence tending to show that his internal appeal would have been denied, and his allegations of filing past lawsuits, for which he does not show that he exhausted his administrative remedies, are insufficient for the Court to draw the inference that exhaustion was futile for this particular claim. *See Richardson v. Kellogg*, No. 14-CV-2372-DDC-JPO, 2015 WL 474320, at *4 (D. Kan. Feb. 4, 2015) (finding no evidence in the record showing that exhaustion would have been "useless" and granting summary judgment against plaintiff on ERISA claim for failure to exhaust administrative remedies). Under these circumstances, the Court finds that Plaintiff has not demonstrated futility such that the Court should permit him to bypass the exhaustion requirement and the important purposes it serves. *See Getting v. Fortis Benefits Ins. Co., Inc.*, 108 F. Supp. 2d 1200, 1204 (D. Kan. 2000) ("The purposes of this exhaustion requirement include minimizing the number of frivolous ERISA suits, promoting the consistent treatment of benefit claims, providing a nonadversarial dispute resolution process, and decreasing the time and cost of claims settlement."); *see also Denton v. First Nat'l Bank of Waco, Tex.*, 765

9

F.2d 1295, 1300 (5th Cir. 1985) (explaining that the exhaustion requirement "is necessary to keep from turning every ERISA action, literally, into a federal case").

Because Plaintiff failed to exhaust his administrative remedies and has not made the requisite showing for the futility exception, his ERISA claim in this civil action is barred. *Holmes*, 762 F.3d at 1204. Anthem is therefore entitled to judgment.

**B.     ATTORNEY'S FEES AND COSTS**

Anthem argues that it should be entitled to recover its fees and costs because (1) it correctly applied the Plan terms when handling Plaintiff's Azithromycin refills and (2) Plaintiff initiated expensive and unnecessary litigation prior to exhausting the Plan's administrative remedies requirements. (Doc. # 32 at 16–17.)

In an ERISA action, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Supreme Court has held that a court may award fees and costs "as long as the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 244 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). In deciding whether to award attorney's fees in an ERISA action, the Court may consider the following factors:

> (1) [T]he degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to personally satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Gordon v. U.S. Steel Corp.*, 724 F.2d 106, 109 (10th Cir. 1983); *see Hardt*, 560 U.S. at 255 n.8.

Considering these factors, the Court finds, in its discretion, that an award of attorney's fees and costs is not appropriate in this case. Although Anthem has achieved "some degree of success on the merits," the Court finds that the majority of the *Gordon* factors weigh against awarding fees to Anthem. With respect to the first factor, the Court finds that the overall record indicates that Plaintiff did not act in bad faith in filing this lawsuit, despite his failure to exhaust administrative remedies. As to the second factor, there is no indication that Plaintiff has the ability to satisfy an award of attorney's fees. Anthem has made no showing or argument regarding the fourth factor, and the Court finds that this factor also weighs against awarding fees.

The Court acknowledges that the third factor—deterring others from acting under similar circumstances—weighs in favor of awarding fees because of the unnecessary expense of time and money incurred by ERISA actions in which a plaintiff fails to exhaust administrative remedies. Likewise, as to the fifth factor, the Court finds that there is little merit to Plaintiff's position, particularly in the absence of a developed administrative record and review by the plan administrator. However, the Court finds that these two factors are not dispositive.

In sum, the Court declines in its discretion to award attorney's fees to Anthem in this case. Plaintiff is cautioned that attorney's fees may be warranted if Plaintiff files another ERISA action without exhausting his administrative remedies or making the requisite showing of futility.

## IV.     CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- The Parties' Joint Motion for Determination of ERISA Action (Doc. # 34) is GRANTED;

- Judgment shall enter in favor of Defendant Anthem and against Plaintiff Erik G. Fischer.

The Clerk is directed to close this case.

DATED:  October 21, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge
